IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JONATHAN GREENBERG, CHRISTOPHER GALE, ROBERT GIZA, and MICHAEL TURRIZIANI, | : : : : : | |
| Plaintiffs, | : : | CIVIL ACTION |
| v. | : : | Case No.: 2:24-cv-02521 |
| JOHNSON CONTROLS, INC., | : : : | |
| Defendant. | : : | |

**DEFENDANT'S BRIEF IN SUPPORT OF MOTION TO DISMISS
PURSUANT TO FED. R. CIV. P. 12(b)(6)**

**I.     INTRODUCTION**

This is an employment matter in which Plaintiffs Jonathan Greenberg, Christopher Gale, Robert Giza, and Michael Turriziani allege that Defendant Johnson Controls, Inc. ("JCI") wrongfully failed to pay them sales commissions they claim they "earned." Plaintiffs seek to recover for breach of contract (Count I), promissory estoppel (Count II), and unjust enrichment (Count III), all of which they allege also amount to violations of the Pennsylvania Wage Payment and Collection Law ("WPCL").

JCI now moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the entire Complaint for failure to state a claim upon which relief can be granted. JCI cannot be liable for breach of contract because under the express written terms of the contract upon which Plaintiffs rely, and under clear Pennsylvania law, Plaintiffs have not "earned" the commissions they claim. Therefore, they have no contractual right to them. The applicable incentive plans at issue here reserved to JCI the right to modify or terminate those incentive plans. Because Plaintiffs had not

1

contractually "earned" the wages at the time JCI ended the applicable incentive plans, Plaintiffs have no breach of contract or WPCL claims. Furthermore, Plaintiffs cannot recover under the equitable theories of promissory estoppel and/or unjust enrichment because, as is the case here, Plaintiffs cannot recover quasi-contractual remedies when their Complaint is based on an express written agreement governing the parties' relationship.

JCI respectfully requests that the Court dismiss Plaintiffs' claims in their entirety and with prejudice, since no amendment of the claims would change the result.

## II. STATEMENT OF RELEVANT MATERIAL FACTS

### A. Plaintiffs' Employment with JCI

Plaintiffs are current JCI employees. (Complaint ¶¶1-4, ECF No. 1). In their capacities as HVAC Account Executives, Plaintiffs sell HVAC systems to commercial enterprises. (*Id.* ¶¶9-13). Plaintiff Greenberg was employed as an HVAC Account Executive since 2011. (*Id.* ¶¶10, 36). Plaintiff Gale has been employed as an HVAC Account Executive since 2009. (*Id.* ¶11). Plaintiff Giza has been employed as an HVAC Account Executive since 2005. (*Id.* ¶12). Plaintiff Turriziani has been employed as an HVAC Account Executive since 2012. (*Id.* ¶13).

JCI issues a new incentive plan and commission payment structures on an annual basis, which applies during the fiscal year that runs from October 1 through September 30 of the following year. (*Id.* ¶15). As HVAC Account executives, Plaintiffs can earn commissions as provided under JCI's written incentive plans then in effect. (*Id.* ¶¶9, 155).

### B. JCI's Fiscal Year 2023 Incentive Plans for Sales of HVAC Systems

Plaintiffs' claims arise out of JCI's Incentive plan for fiscal year 2023, entitled "HVAC Smart Building, Complex and Account Sales (SCPJ, SC04) Incentive Plan FY2023" (hereinafter,

"FY2023 Incentive Plan" or "FY2023 Plan"). A true and correct copy of the FY2023 Incentive Plan is attached to the Declaration of Aubrey Kallenberger as **Exhibit A**.[1]

By its express terms, the FY2023 Incentive Plan was in effect from October 1, 2022 through September 30, 2023. (Complaint ¶15; **Ex. A** at p. 36). Regarding the Plan's duration, the cover page for the FY2023 Incentive Plan reads "Effective October 1, 2022," and the document expressly defined the "plan year" as "[t]he year, beginning October 1 and ending September 30." (**Ex. A** at pp. 1, 36).

The FY2023 Incentive Plan also expressly reserved to JCI the following unfettered rights and authority:

> Management has the right to amend, modify, or terminate the plan at the company's discretion with or without notice to the participants, and without consultation.

(*Id.* at p. 38). It also expressly stated, "[i]n addition, the company reserves the right to change this incentive plan for this Plan Year and any subsequent Plan Year." (*Id.* at p. 37). Thus, JCI expressly placed Plaintiffs on notice that the FY2023 Incentive Plan applied *only* to the plan year ending September 30, 2023, and that JCI could amend its incentive plans at any time, and/or implement an entirely different commission structure in its future incentive plans.

Regarding the payment of commissions, the FY2023 Incentive Plan applicable to Plaintiffs provided they would be paid for:

---

[1] Four of JCI's Incentive Plans (the FY2023 Incentive Plan and three FY2024 Incentive Plans) and a document cited and described in the Complaint are attached to this Motion and quoted herein. JCI redacted proprietary and trade secret information from these documents. These documents are properly considered on this Fed. R. Civ. P. 12(b)(6) motion because Plaintiffs expressly reference these documents in their Complaint, and the documents are integral to their claims. *See* Complaint ¶15 n.1, ECF No. 1. Courts may "consider 'an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.'" *Brezinski v. Widener University*, 582 F. Supp. 3d 257, 264 (E.D. Pa. 2022) (Younge, J.) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). "Courts may do so because 'the primary problem raised by looking to documents outside the complaint—lack of notice to the plaintiff—is dissipated where the plaintiff has actual notice . . . and has relied upon [those] documents in framing the complaint.'" *Id.* (citing *Schmidt v. Skolas*, 770 F. 3d 241, 249 (3d Cir. 2004)).

3

- Customer Bookings for Install and L&M (Labor & Material): 30% of commission paid up front at month end; the next 35% of commission payments continue to be made as cash is collected; and the remaining balance is paid at the time of transfer with 100% of all cash collected from the customer.

- Customer Contracts for PSA (Planned Service Agreements)/OPS (Operations)/M&V (Measurement & Verification): a credit of 75% of the commission within 45 days following the month in which the contract is booked and the remaining 25% when the contract transfers and renews. The remaining 25% is not considered earned if the contract is not renewed.

(*Id.* at pp. 9, 14).

The FY2023 Incentive Plan also made clear that these commission payments remained **un**earned until contracts were transferred and fully reconciled:

> Please note that the Company is paying incentive, in some instances, prior to when the incentive is actually earned. **Incentive on a contract is not actually earned until transfer and reconciliation.** The Company reserves the right to deduct overpayments from future incentive payments. This reimbursement is referred to as a "chargeback." Chargebacks on a contract will not exceed total amount of incentive paid on that contract.
>
> **All incentives and kickers described in this plan will be reconciled and treated as earned within 45 days following the month that the contract transfers and is 100% collected.**

(*Id.*, "Incentive Reconciliation, Overpayments and Advances" at p. 28) (emphasis added). Transfer and reconciliation are defined in the FY2023 Incentive Plan. "Transfer" means that the project has been "100% billed, at least 90% collected, estimated completion date has occurred and the project manager has marked it for transfer in JCI Financial System." (*Id.* at p. 33). "Reconciliation" means the "process of adjusting the executed margin payments (positively or negatively) based upon the actual results of the project." (*Id.* at p. 35). The reason for this is that the commission was ultimately paid on Executed Gross Margin, *i.e.*, the revenue JCI received for the project minus the actual cost the company incurred to deliver it. (*Id.* at p. 33).

Thus, under the FY2023 Incentive Plan's express terms, all commissions remained **un**earned until the contract transferred in JCI Financial System and the reconciliation process was

completed with payment collected. Stated differently, no commission could be "earned" while the sale remained incomplete under the FY2023 Incentive Plan.[2] For this reason, Plaintiffs' repeated assertion in the Complaint that JCI failed to pay them "earned but unpaid" commissions for jobs that were "booked in 2023 but incomplete as of November 1, 2023" or "booked but not completed during the 2023 Plan year" is belied by the express material terms of the FY2023 Incentive Plan on which Plaintiffs rely.

This means, the commissions Plaintiffs seek in this litigation—which the Complaint (¶¶27-30) identifies as those associated with jobs "that were booked in 2023 but incomplete as of November 1, 2023" (Complaint ¶32), —were never "earned" under the FY2023 Incentive Plan by Plaintiffs' own admission. Instead, such alleged commissions were actually **un**earned incentives, which were not due for payment when the FY2023 Incentive Plan Year ended on September 30, 2023 and that Plan was no longer in effect. In fact, Exhibits 1-4 to Plaintiffs' Complaint, which Plaintiffs mislabel as a listing of "earned but unpaid commissions" describe the commission payments that Plaintiffs seek as "*Estimated* Remaining Incentive," not "**Earned** Incentive" indicating that these sales were not yet completed or earned. *See generally* Complaint, ¶¶27-30, Exs. 1-4 (emphasis added). As such, both the unequivocal terms of the FY2023 Incentive Plan and the exhibits attached to the Complaint make crystal clear that the commission payments at issue in this litigation are, by definition, **un**earned under the FY2023 Incentive Plan.

### C. New Commission Structures Under the FY2024 Incentive Plans

Consistent with JCI's reserved rights in the FY2023 Incentive Plan to "change [its] incentive plan for . . . any subsequent Plan Year," and to "amend, modify, or terminate" the

---

[2] For PSA/OPS/M&V Commissions, the initial sale is "complete" only after the contract renewal process is completed. (**Ex. A**, "Calculating Core Commission: Pay Timing," at p. 14).

incentive plans at is discretion, JCI implemented new incentive plans for fiscal year 2024 (collectively, FY2024 Incentive Plans) with an October 1, 2023 effective date:

- Plaintiff Greenberg became subject to the "HVAC Equipment Seller (SC14) Incentive Plan FY2024";[3]

- Plaintiffs Gale and Giza became subject to the "BSNA Territory Field Rep (Hybrid) Incentive Plan FY2024";[4] and

- Plaintiff Turriziani became subject to the "BSNA Install Rep Incentive Plan FY2024."[5]

The FY2024 Incentive Plans applicable to Gale, Giza, and Turriziani modified and simplified the commission payment framework for Plaintiffs and other employees selling commission-eligible products for JCI so that, as Plaintiffs allege, advances on "commissions [would be] paid at the time of contract booking, irrespective of when a project is completed" and regardless of when JCI receives complete payment. (Complaint, ¶¶31-32). Thus, Plaintiffs would no longer have to wait to be paid full commission advances.

Significantly, the FY2024 Incentive Plans applicable to Gale, Giza, and Turriziani do not contain any language that would entitle Plaintiffs to the payment of any unearned incentive that might (or might not) have turned into an "earned" incentive under the FY2023 Incentive Plan after September 30, 2023 – the date the FY2023 Plan expired. In other words, any incentive that was **un**earned at the expiration of the FY2023 Incentive Plan on September 30, 2023 (including all the amounts listed in Exhibits 1-4 to the Complaint) would remain **un**earned and not contractually payable. In taking this action, JCI exercised its unambiguous right to change its incentive plan,

---

[3] A true and correct copy of the HVAC Equipment Seller (SC14) Incentive Plan FY2024 is attached to the Declaration of Aubrey Kallenberger as **Exhibit B**.

[4] A true and correct copy of the BSNA Territory Field Rep (Hybrid) Incentive Plan FY2024 is attached to the Declaration of Aubrey Kallenberger as **Exhibit C**.

[5] A true and correct copy of the BSNA Install Rep Incentive Plan FY2024 is attached to the Declaration of Aubrey Kallenberger as **Exhibit D**.

including terminating payments that might (or might not) become due under prior plans, and terminate the FY2023 Incentive Plan.[6]

Plaintiffs commenced this action after being informed that JCI's new commission structure under the FY2024 Incentive Plan does not encompass payment of any commission associated with the sales made under the FY2023 Incentive Plan that were unearned on September 30, 2023 (when the FY2023 Incentive Plan, by its terms, expired). *See* FAQ regarding FY2024 Incentive Plans attached to the Declaration of Aubrey Kallenberger as **Exhibit E**.

In their Complaint, Plaintiffs incorrectly allege that their unearned commissions under the FY2023 Incentive Plan for sales "booked in 2023 but incomplete as of November 1, 2023" are "earned but unpaid commissions" to which they are entitled. (Complaint ¶32). Plaintiff's conclusory assertion that unpaid commissions were "earned" is the cornerstone of their action, but it is simply wrong. A plain reading of the FY2023 and FY2024 Incentive Plans clearly demonstrates that Plaintiffs are not legally entitled to unearned commissions under the FY2023 Incentive Plan because: (1) they did not become due for payment before September 30, 2023: (2) JCI exercised its contractually reserved right to change and redesign the commission structure, and implemented a new structure for FY2024; and (3) nothing in the FY2024 Incentive Plans provide for a payment of any unearned commission under the FY2023 Incentive Plan, which is no longer in effect. Accordingly, Plaintiffs' Complaint should be dismissed for a failure to state a claim.

---

[6] Shortly after September 30, 2023, Greenberg transferred from the position of HVAC Salesperson to the position of Equipment Salesperson in a different business unit. (Complaint, ¶36). As such, Greenberg became subject to an entirely different FY2024 Incentive Plan (the SC14 Plan) that allowed for certain individuals on the SC14 Plan in FY 2023 to collect "backlog" commissions that had not yet been earned at the end of the SC14 plan year. (*Id.*) The fact that this particular FY2024 Incentive Plan now applicable to Greenberg permitted certain equipment salespersons to collect "backlog" commissions does not change the fact that the express terms of the FY2023 Incentive Plan to which Greenberg was subject expressly provides that sales booked in 2023 but incomplete at the conclusion of the plan year (September 30, 2023) were unearned.

## III.  ARGUMENT

### A.  Motion to Dismiss Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." If a complaint fails "to state a claim upon which relief can be granted," it must be dismissed. Fed. R. Civ. P. 12(b)(6). The complaint's factual allegations "must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, the claim must be "plausible on its face," requiring "factual content that allows the court to draw the reasonable inference that a defendant is liable for the misconduct alleged . . . [raising] more than a sheer possibility that a defendant has acted unlawfully." *Id.* When assessing the merits of a Rule 12(b)(6) motion, the Court must "accept as true all factual allegations in the complaint and view those facts in the light most favorable to the non-moving party." *Doe v. Univ. of the Scis.*, 961 F.3d 203, 208 (3d Cir. 2020).

The Third Circuit has explained that to determine the sufficiency of a complaint under the standard set forth in *Iqbal* and *Twombly*, a district court must do the following:

> First, the court must tak[e] note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of the truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). To survive a motion to dismiss, a complaint "must do more than allege the plaintiff's entitlement to relief" – it must "show" such entitlement through factual allegations. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). A claim should be dismissed if the complaint does not contain "enough facts to state a claim

8

to relief that is plausible on its face." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 2344 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 570)).

"In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). *See also* n.1. Additionally, "a document integral to or explicitly relied upon in the complaint may be considered." *Brown v. Tait Towers Manufacturing*, LLC, No. 21-04573, 2022 U.S. Dist. LEXIS 11953, at *6-7 (E.D. Pa. Jan. 21, 2022) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)). "Courts can resolve contract disputes on a motion to dismiss if the claims under which the plaintiff seeks relief are barred by the unambiguous terms of a contract attached to the pleading, because the interpretation of an unambiguous contract is a matter of law for the court." *Canters Deli Las Vegas, LLC v. Freedompay, Inc.*, 460 F. Supp. 3d 560, 569 (E.D. Pa. 2020) (citing *Freedom Props., L.P. v. Lansdale Warehouse, Inc.*, 06-5469, 2007 U.S. Dist. LEXIS 57116, at *3 (E.D. Pa. Aug. 2, 2007)).

Neither the Complaint nor the undisputedly authentic documents in this matter demonstrate that Plaintiffs have pleaded sufficient facts to aver that their claims are plausible. Here, Plaintiffs' conclusory legal allegations that they somehow "earned" the commissions at issue, and that JCI has "breached" the now defunct FY2023 Incentive Plan must yield to the express terms of the incentive plans at issue. Simply put, Plaintiffs have not earned the "backlog" commissions to which they claim to be entitled. As a result, the Court should dismiss Plaintiffs' Complaint for failure to state a claim.

B. **Plaintiffs' Breach of Contract Claims Must Be Dismissed**

The "WPCL does not create a right to compensation. Rather, it provides a statutory remedy when the employer breaches a contractual obligation to pay earned wages." *Weldon v. Kraft, Inc.*, 896 F.2d 793, 801 (3d Cir. 1990). "The contract between the parties governs whether specific wages or commissions are 'earned.'" *O'Donnell v. Passport Health Communs.*, No. 11-3231, 2013 U.S. Dist. LEXIS 51432, at *28 (E.D. Pa. Apr. 10, 2013). *See also Hicks v. Glob. Data Consultants, LLC*, 288 A.3d 875, 887 (Pa. Super. Ct. 2022) ("Under Pennsylvania contract law, the terms of the contract determine when commissions are computed and paid.") "Claims for violation of the WPCL are entirely contingent upon proof of a contractual obligation to pay wages and an attendant breach of that obligation." *Diodato v. Wells Fargo Ins. Servs., USA*, 44 F. Supp. 3d 541, 559 (M.D. Pa. 2014) (citing *Sheils v. Pfizer, Inc.*, 156 F. App'x 446, 451-52 (3d Cir. 2005)).

"[W]here no breach of contract occurs, there is no violation of the Wage Payment and Collection Law." *Lejeck v. MBH Sols., Inc.*, No. 02-342, 2007 U.S. Dist. LEXIS 68868, at *19 (W.D. Pa. Sep. 18, 2007). To succeed on a claim for breach of contract, a party must prove "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages." *Pettiford v. State Farm Ins. Co.*, No. 23-4360, 2024 U.S. Dist. LEXIS 20257, at *6 (E.D. Pa. Feb. 6, 2024) (Younge, J.) (citing *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)). "Discerning the parties' intent is the primary objective of contract interpretation, and the strongest expression of the parties' intent is the language of the contract itself." *AICPCU v. Posner*, No. 19-5369, 2022 U.S. Dist. LEXIS 111131, at *14 (E.D. Pa. June 22, 2022) (citing *Baldwin v. Univ. of Pittsburgh Med. Ctr.*, 636 F.3d 69, 75-76 (3d Cir. 2011)).

It is self-evident that a party cannot be found liable for breaching a contract when it has acted in accordance with the terms of the contract. Here, the only contract upon which Plaintiffs base their claims for commissions is the FY2023 Incentive Plan. (Complaint ¶15). That contract makes clear that Plaintiffs did not, and would not, earn any commissions until "transfer and reconciliation" was completed. (**Ex. A**, p. 28). The Complaint does not allege or identify any project on which transfer and reconciliation took place before JCI ended the FY2023 Plan and for which Plaintiffs were not paid. Once JCI exercised its right to terminate the FY2023 Plan, and communicated that it would not pay further commissions under that FY2023 Plan, Plaintiffs' right to commissions under the FY2023 Plan were extinguished.

It is axiomatic that when the clear terms of a contract demonstrate a plaintiff is not entitled to commissions, the plaintiff is not entitled to commissions. *See, e.g.*, *Sendi v. NCR Comten, Inc.*, 619 F. Supp. 1577 (E.D. Pa. 1985) (employee not entitled to sales commissions where express terms of sales commission plan outlined a number of conditions precedent that must be met for commissions to be earned and those conditions precedent were not met and noting that "a contractual restriction on when commissions are earned does not frustrate the [WPCL's] purpose."); *Accurso v. Infra-Red Servs.*, No. 13-7509, 2018 U.S. Dist. LEXIS 25907, at *27 (E.D. Pa. Feb. 15, 2018) ("the case law is clear that only *earned* wages that were due and owing are recoverable under the statute, and an employment contract controls as to whether certain commission are 'earned.'"); *Britton v. Whittmanhart, Inc.*, No. 09-1593, 2009 U.S. Dist. LEXIS 71813, at *17-18 (E.D. Pa. Aug. 14, 2009) ("Courts look to the contract between the parties to determine whether specific commissions were 'earned.'"); *Shannon v. Keystone Info. Sys., Inc.*, No. 92-CV-6562, 1993 U.S. Dist. LEXIS 10855, at *6 (E.D. Pa. Aug. 4, 1993) ("In determining

whether the salesman has a right to the commission, the dispositive factor is the express agreement between the parties.")

Plaintiffs have no cause of action for breach of contract and thus, no WPCL claim. Count I of the Complaint should be dismissed with prejudice.

### C. Plaintiffs' Promissory Estoppel and Unjust Enrichment Claims Must Be Dismissed

Plaintiffs' alternative claims for promissory estoppel (Count II) and unjust enrichment (Count III) are barred as a matter of law because an express contract governs the question of whether Plaintiffs are entitled to payment of the commissions they seek. "Under Pennsylvania law, an enforceable contract between two parties precludes relief for a claim of promissory estoppel." *Cardiology Care for Children Inc. v. Ravi*, No. 17-4743, 2018 U.S. Dist. LEXIS 66404, at *14 (E.D. Pa. Apr. 18, 2018) (citing *W. Chester Univ. Found. v. Metlife Ins. Co.*, 259 F. Supp. 3d 211, 222-23 (E.D. Pa. 2017)). *See also Carlson v. Arnot-Ogden Mem'l Hosp.*, 918 F.2d 411, 416 (3d Cir. 1990) (holding that where "the parties formed an enforceable contract, relief under a promissory estoppel claim is unwarranted"); *Benchmark Grp., Inc. v. Penn Tank Lines, Inc.*, No. 07-2630, 2008 U.S. Dist. LEXIS 6959, at *1-2 (E.D. Pa. Jan. 30, 2008) (granting motion to dismiss a promissory estoppel claim because there was no dispute that the parties entered into an enforceable written agreement); *Linden v. SAP Am., Inc.*, No. 03-3125, 2004 U.S. Dist. LEXIS 8598, at *20-21 (E.D. Pa. May 6, 2004) (concluding that although breach of contract and promissory estoppel claims may be pleaded in the alternative, once the court finds that a contract exists, the promissory estoppel claim must be dismissed).

Moreover, in *Wilson Area Sch. Dist. v. Skepton*, 895 A.2d 1250 (Pa. 2006), the Pennsylvania Supreme Court wrote "it has long been held in this Commonwealth that the doctrine of unjust enrichment is inapplicable when the relationship between parties is founded upon a

written agreement or express contract, regardless of how harsh the provisions of such contracts may seem in the light of subsequent happenings." *See also Benchmark Grp., Inc. v. Penn Tank Lines, Inc.*, No. 07-2630, 2008 U.S. Dist. LEXIS 6959, at *1-2 (E.D. Pa. Jan. 30, 2008) ("In Pennsylvania, the quasi-contractual doctrine of unjust enrichment (quantum meruit) [is] inapplicable where the relationship between the parties is founded on a written agreement or express contract.")

Plaintiffs allege that all their claims arise out of the FY2023 Incentive Plan. *See, e.g.*, Complaint, ¶15 ("Payment of commissions to Plaintiffs are governed by Defendant's written incentive plans … The plan at issue in this lawsuit is the Fiscal year 2023 Plan that was effective October 1, 2022 through September 30, 2023"); ¶16 ("The [FY2023 Incentive Plan] detailed the process by which Plaintiffs' commissions were to be earned and paid."); Complaint, ¶¶22-26 (alleging Plaintiffs are due various commissions "in conformity with the [FY2023 Incentive Plan].") Considering the undeniable fact, which Plaintiffs admit, that the written FY2023 Incentive Plan (and subsequent FY2024 Incentive Plans) govern the parties' relationship in this matter, the promissory estoppel and unjust enrichment claims must be dismissed with prejudice.

### D. The Complaint Should Be Dismissed with Prejudice

While dismissal under Federal Rule of Civil Procedure 12(b)(6) is typically without prejudice, where any amendment would be futile, the case should be dismissed with prejudice. "Leave to amend is properly denied if amendment would be futile, i.e., if the proposed complaint could not withstand a renewed motion to dismiss." *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018). *See also Canty v. City of Phila.*, No. 23-1873, 2024 U.S. Dist. LEXIS 53397, at *6 (E.D. Pa. Mar. 26, 2024) (dismissing certain claims with prejudice without leave to amended because defects could not be cured with further amendment).

Given the fact that the FY2023 Incentive Plan controls and forecloses Plaintiffs' claims, there is no amendment Plaintiffs could propose that would not be futile. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (recognizing that denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile).

### IV. CONCLUSION

Based upon the foregoing, Defendant Johnson Controls, Inc. respectfully requests that the Court grant its Motion pursuant to Federal Rule of Civil Procedure 12(b)(6) and dismiss Plaintiffs' claims with prejudice.

Respectfully submitted,

**OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.**

*/s/ Lee E. Tankle*
Lee E. Tankle, Esq.
1735 Market Street, Suite 3000
Philadelphia, PA 19103
(215) 995-2831 (Phone)
lee.tankle@ogletree.com

Brian D. Lee, Esq.
10 Madison Avenue, Suite 400
Morristown, New Jersey 07960
(973) 630-2306 (Phone)
Brian.Lee@ogletree.com

Dated: August 26, 2024                    *Attorneys for Defendant*