IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JONATHAN GREENBERG, <br> CHRISTOPHER GALE, ROBERT GIZA, <br> and MICHAEL TURRIZIANI, <br><br> Plaintiffs, <br><br> v. <br><br> JOHNSON CONTROLS, INC., <br><br> Defendant. | Civil Action <br><br> No. 24-cv-2521-JMY |

## MEMORANDUM

**J. Younge**                                                                 **September 25, 2024**

### I.     INTRODUCTION

Currently before this Court is Defendant's Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6). (ECF No. 9).[1] The Court finds this Motion appropriate for resolution without oral argument. Fed. R. Civ. P. 78; L.R. 7.1(f). For the reasons set forth in this Memorandum, said Motion is Granted in part and Denied in part.

### II.    FACTUAL BACKGROUND

This litigation, involving both company employees and management, stems from a disagreement over the commission payment structure utilized by Defendant Johnson Controls, Inc. ("JCI") in the employment of Plaintiffs Jonathan Greenberg, Christopher Gale, Robert Giza, and Michael Turriziani. (Compl., ECF No. 1). Plaintiffs are HVAC Account Executives, who serve as commissioned salespersons of HVAC systems to commercial enterprises through JCI's

---

[1] When applicable, the Court adopts the pagination supplied by the CM/ECF docketing system, which does not always match the document's internal pagination.

1

Horsham, PA branch office. (Compl. ¶¶ 9-13). Plaintiffs have been employed by JCI for 12 to 19 years and each has held their position during the pertinent period in question. (Compl. ¶¶ 9-13).

Payment of commissions to Account Executives is governed by JCI's written incentive plan, by which the Plaintiffs have received compensation during each year of their employment with JCI. (Compl. ¶ 16). In this action, the specific incentive plan that is in dispute is entitled "Incentive Plan – HVAC Smart Building, Complex and Account Sales" (the "2023 Plan"). The 2023 Plan went into effect on October 1, 2022 and expired on September 30, 2023 (Compl. ¶ 16). According to Plaintiff's representation of the plan, for most sales, Account Executives were due commissions of 6% of the profits of each sale. (Compl. ¶ 16). Of this commission, Plaintiffs were to be paid 20 to 25% of the total commissions at the time a sale is booked, while the balance of 75 to 80% percent of the commissions were to be paid to Plaintiffs over the duration of the project until the job transferred to warranty. (Compl. ¶ 17). The Plaintiffs further allege that irrespective of whether booked jobs were completed during the time when the 2023 plan was in effect or in subsequent years thereafter, the incentive plan required that Plaintiffs be paid all remaining commissions owed one month after the completed jobs went to warranty. (Compl. ¶¶ 19-20).

Plaintiffs allege they booked substantial sales during the period the 2023 plan was in effect and that JCI paid Plaintiffs 25% of their commission 30 days after each job was booked. (Compl. ¶¶ 22-25). JCI also paid Plaintiffs their remaining commission for the booked jobs that went to warranty during this period. (Compl. ¶ 26). At the conclusion of the period that the 2023 Plan was in effect, several of Plaintiffs' booked jobs were not completed to warranty, leaving balances of what Plaintiffs assert they are owed as commissions for said jobs that would later be completed to warranty. (Compl. ¶¶ 27-30). According to a spreadsheet provided to Plaintiffs by

JCI that tracked their "Estimated Remaining Incentive," Plaintiffs were expecting the following commissions: $188,725 for Greenberg, $137,885 for Gale, $184,745 for Giza, and $206,260 for Turiziani. (Compl. ¶¶ 27-30).

After the 2023 Plan expired, JCI implemented a 2024 Incentive Plan (the "2024 Plan") in November 2023. (Compl. ¶ 31). The 2024 Plan contained a new commission payment structure for HVAC sales that differed from the 2023 Plan, including paying out commissions at the time the job is booked. (Compl. ¶ 31). In addition to implementing new terms for future jobs, the 2024 Plan also provided that JCI would not pay commissions from jobs that were booked under the 2023 Plan but not completed to warranty as of November 1, 2023. (Compl. ¶ 32). As such, Plaintiffs would not be paid the above-mentioned commission balances that they expected. (Compl. ¶ 32).

Plaintiffs commenced this action against JCI on June 10, 2024, alleging breach of contract (Count I), promissory estoppel (Count II), and unjust enrichment (Count III) claims, all of which they allege also amount to violations of the Pennsylvania Wage Payment and Collection Law ("WCPL"). (Compl. ¶¶ 39-71). JCI filed the present Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) for failure to state a claim upon which relief can be granted. (ECF No. 9). With respect to the breach of contract claim, JCI argues that under the express written terms of the 2023 Plan, Plaintiffs have no contractual right to the commissions that they claim, thus indicating that their refusal to pay did not breach the contract. (ECF No. 9). Further, JCI asserts that Plaintiffs' promissory estoppel and unjust enrichment claims are not viable because quasi-contractual remedies are not recoverable where there is an express written agreement governing the parties' relationship. (ECF No. 9).

### III. LEGAL STANDARD

The standard for a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is examined in detail in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). After *Iqbal*, it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. *Id.* at 678; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim [for] relief that is plausible on its face.'" *Tatis v. Allied Interstate*, LLC, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Iqbal*, 556 U.S. at 678). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678). All well-pleaded allegations in the complaint must be accepted as true and interpreted in the light most favorable to the plaintiffs, and all inferences must be drawn in the plaintiffs' favor. *See McTernan v. City of York*, 577 F. 3d 521, 526 (3d. Cir. 2009). Thus, this Court must examine Plaintiff's claims to determine whether it can infer that Defendant is liable for the alleged misconduct.

In this determination of the motion to dismiss, the Court will "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). Courts may do so because "the primary problem raised by looking to documents outside the complaint—lack of notice to the plaintiff—is dissipated where the plaintiff has actual notice ... and has relied upon [those] documents in

4

framing the complaint." *Schmidt v. Skolas*, 770 F. 3d 241, 249 (3d Cir. 2004) (internal quotation marks, alteration, and citation omitted). "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F. 2d 1192, 1196 (3d Cir. 1993)*, cert. denied,* 510 U.S. 1042 (1994) (citing *Goodwin v. Elkins & Co.*, 730 F. 2d 99, 113 (3d Cir. 1984)). Courts may consider these documents without having to convert the motion to one for summary judgment. *Id.*

IV.   **DISCUSSION**

    **A. Plaintiffs Have Sufficiently Plead a Breach of Contract Claim in Violation of the WPCL**

Under Pennsylvania law, the "WPCL does not create a right to compensation. Rather, it provides a statutory remedy when the employer breaches a contractual obligation to pay earned wages." *Weldon v. Kraft, Inc.*, 896 F.2d 793, 801 (3d Cir. 1990). It is "[t]he contract between the parties [that] governs… whether specific wages are earned." *Id.* As such, Plaintiffs' claim that JCI violated the WPCL requires a showing that it "breached a contractual obligation pay [Plaintiffs'] earned wages." *Sheils v. Pfizer, Inc.*, 156 F. App'x 446, 452 (3d Cir. 2005).

A breach of contract claim under Pennsylvania law requires "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999). Even though "every term of [the] contract [does not have to] be stated in complete detail, every element must be specifically pleaded." *Id.* Pursuant to these requirements, Plaintiffs have provided sufficient underlying facts in their Complaint to allege a violation of the WPCL.

Throughout the Complaint, Plaintiffs have plead that the payment structure for their earned commissions from October 1, 2022 to September 30, 2023 was governed by the 2023

5

Plan. This plan details the process by which Plaintiffs' commissions were to be earned and paid by JCI. Plaintiffs' allegations outline these essential terms, including the percentage earned through commissions, what must occur for payment to be triggered, and the structure for the timing of payments. JCI doesn't dispute the existence of the 2023 Plan, as it attached what it claims is a "true and correct copy" of the contract to the present motion. (ECF No. 9-1, fn. 3).

Plaintiffs further allege in the Complaint that JCI breached this contract by refusing to pay Plaintiffs their remaining 75% of the commissions they earned for jobs that closed after the 2023 Plan term ended. Specifically, they aver that the terms of the 2023 Plan provided they would be paid their full commission for jobs that were booked during the life of the 2023 Plan when the jobs were transferred to warranty, irrespective of whether that occurred outside the period the 2023 Plan was effective. JCI's refusal to pay what Plaintiffs identifies as their "earned and unpaid commissions" is what the Complaint alleges as JCI's breach of contract. Further, the Complaint outlines the resultant damages from said breach, including the alleged commissions due under the 2023 Plan.

In response, JCI argues that Plaintiffs have no cause of action because it "has acted in accordance with the terms of the contract," such that it "cannot be found liable for breaching [said] contract[.]" (ECF No. 9-1, p. 11). Based on the contract that it attached to their motion, JCI asserts that: (1) Plaintiffs' commissions were "actually unearned" and not due for payment at the end of the 2023 Plan term; (2) it "exercised its right to terminate the [2023 Plan], and… Plaintiff's right to commissions under the [2023 Plan] were extinguished;" and (3) the 2024 Plan maintained the unearned status of these commissions, making them "not contractually payable." (ECF No. 9-1, p. 5, 6, 11).

This Court, however, is unable to require dismissal based on the document attached to JCI's motion. "The Third Circuit has noted that a district court may also review documents that a defendant attaches as an exhibit to a motion to dismiss, but only if the documents are undisputedly authentic and the plaintiff's claims are based on them." *First Nonprofit Ins. Co. v. Meenan Oil LLC*, 462 F. Supp. 3d 537, 541 (E.D. Pa. 2020) (citing *Estate of Roman v. City of Newark*, 914 F.3d 789, 796 (3d Cir. 2019)) (internal quotations omitted). For this exception to apply, the document, here the 2023 Plan, must be a document "whose authenticity no party questions ...." *First Nonprofit Ins. Co.*, 462 F. Supp. 3d at 542 (citing *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002)). Plaintiffs contend that the document that JCI claims is the 2023 Plan is not the actual contract, but rather a "summary" of the contract. The document itself, as the Plaintiff points out, says "[t]his summary highlights only the key provisions of the plan. In the event of a discrepancy between this summary and the terms of the plan document, the terms of the plan document control." (ECF No. 9-2, Exhibit A, pg. 41). As a result of Plaintiff's dispute of the document's authenticity, "it is not an 'integral document' that the Court may consider at this stage of the litigation." *First Nonprofit Ins. Co.*, 462 F. Supp. 3d at 542.

Further, the document is not a reviewable public record. While "matters of public record" are one of the limited categories of documents that can be reviewed at the motion to dismiss stage, the Third Circuit defines public records narrowly. *Toner v. GEICO Ins. Co.*, 262 F. Supp. 3d 200, 206 (E.D. Pa. 2017). Public records include "criminal case dispositions such as convictions or mistrials, letter decisions of government agencies, and published reports of administrative bodies." *Pension Ben. Guar. Corp.*, 998 F.2d at 1197; *see also Schmidt v. Skolas*, 770 F.3d 241, 249 (3d. Cir. 2014) (applying the *Pension* definition of public records narrowly

7

and refusing to consider press releases not attached to a complaint). As the document clearly does not fall within any of those categories, this Court declines to extend the *Pension* definition of a public record by considering this document as such.

In sum, at this stage in the litigation, this Court can only consider the Complaint and its attached exhibits. "[JCI] may be entitled to summary judgment based on one or more of the provisions in [JCI's exhibit], and nothing precludes [JCI] from renewing these arguments in a subsequent Rule 56 motion." *First Nonprofit Ins. Co. v. Meenan Oil LLC*, 462 F. Supp. 3d 537, 543 (E.D. Pa. 2020). However, based on the Complaint and its exhibits, Plaintiff has sufficiently plead a breach of contract claim in violation of the WPCL. The Motion to Dismiss as to Count I is denied.

## B. Plaintiffs Promissory Estoppel and Unjust Enrichment Claims Must Be Dismissed as Plaintiffs Have Pled a Violation of the WCPL Through Their Breach of Contract Claim

Under Federal Rule of Civil Procedure 8(d), Plaintiffs can exercise their right to allege alternative forms of relief "regardless of consistency." Fed. R. Civ. P. 8(d). However, in Pennsylvania law, promissory estoppel and unjust enrichment have "no application" if a court finds that a contract exists. *See The Benchmark Grp., Inc. v. Penn Tank Lines, Inc.*, No. 07-2630, 2008 WL 282694, at *1 (E.D. Pa. Jan. 30, 2008) (granting a motion to dismiss the unjust enrichment and promissory estoppel claims because a contract existed); *see also Cardiology Care for Child. Inc. v. Ravi*, No. 17-04743, 2018 WL 1870717, at *5 (E.D. Pa. Apr. 18, 2018) (granting a motion to dismiss a promissory estoppel claim because there was "no dispute that [the parties] entered into an enforceable agreement."); *Wilson Area Sch. Dist. v. Skepton*, 586 Pa. 513, 520, 895 A.2d 1250, 1254 (2006) ("the doctrine of unjust enrichment is inapplicable when the relationship between parties is founded upon a written agreement or express contract[.]") As

noted, the parties here do not dispute that a contract exist, but instead contest the contents and interpretation of said contract. Plaintiffs' assertion that the contract presented by JCI is not the true and accurate contract does not change the fact that a true and accurate contract does exist, the breach of which is the basis of their claim that Defendants have violated the WCPL. Because "the parties entered into an enforceable written agreement," *Penn Tank Lines, Inc., 2008 WL 282694 at *1*, JCI's Motion to Dismiss is granted as to Counts II and III with prejudice.

## V.     CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED in PART and DENIED in PART.

An appropriate Order follows.

**IT IS SO ORDERED.**

BY THE COURT:

/s/ John Milton Younge
**Judge John Milton Younge**